In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite Inc., and Chemetron Corporation, Debtors.

Claim of Cindy M. FRANCESCHELLI et al.

Bankruptcy No. 88–00448.
Motion No. 89–6162–M.
Claim Nos. 5925–5930.

United States Bankruptcy Court, W.D. Pennsylvania.

May 8, 1990.

---

M. Bruce McCullough, George L. Cass, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for debtor.

Kenneth M. Steinberg, Steidl & Steinberg, Pittsburgh, Pa., for claimants.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

Before the court is a dispute concerning the priority status of severance pay claims filed by six former full-time, salaried employees of Allegheny International, Inc. ("AI" or the "Debtor-in-Possession"). AI argues that only the portion of the severance claims earned post-petition is entitled to administrative priority. In contrast, the employees maintain that their entire severance pay claims are entitled to administrative priority treatment. For the reasons stated below, the court holds that the Severance Pay Plan (the "plan") of AI entitles the claimants to receive administrative priority status to the extent that the severance coverage benefit is granted uniformly to all employees regardless of the length of their service. To the extent that the plan awards additional severance pay based on length of service, the claimants are entitled to receive administrative priority status for only the portion of their claims actually earned post-petition and priority status under 11 U.S.C. § 507(a)(3)[1] for the remain-

---

1. Section 507 (11 U.S.C. § 507)
   § 507. Priorities.

(a) The following expenses and claims have priority in the following order:

ing portion of their claims earned 90 days immediately prior to the filing. However, inasmuch as the claimants have already received three months' severance pay, it is unlikely that the remaining claims are entitled to any priority.

The instant matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(B), involving the allowance or disallowance of claims against the estate. This court has jurisdiction over the parties and subject matter of these actions under 28 U.S.C. § 1334.

The six employee-claimants were involuntarily terminated during the period from June through September of 1988. Their positions with the Debtor-in-Possession were eliminated. By order of this court dated February 20, 1988, AI was authorized to make severance payments

> on account of services rendered by their employees, whether before or after the filing date, in the ordinary course of business and in accordance with existing policies and practices, with respect to any present employee who may be laid off post-petition, except that no severance pay for a period longer than three months may be paid to any one employee without further Order of Court.

In accordance with this order, payments were made to each of these terminated employees. The claimants have filed proofs of claim for the balance of their severance pay and have asserted that the entire balance is entitled to administrative priority. AI has filed a motion to reclassify and reduce these claims. A hearing was held before this court on January 11, 1990.

The sole issue before the court is whether and to what extent the severance pay

claims are entitled to statutory priority. The applicable statute, 11 U.S.C. § 503 [2], allows for wages and salaries for services rendered after the commencement of a case to be eligible to receive administrative priority. To what extent severance pay is included within the definition of all actual and necessary costs of preserving the estate is not as clearly defined.

■■■ The United States Court of Appeals for the Third Circuit has ruled in the case of *In re Public Ledger, Inc.*, 161 F.2d 762, 771–773 (3d Cir.1947), that in calculating the amount of the severance pay priority to be afforded, the labor contract provisions in effect between the employer and its employees are determinative. If the employment contract allows for all terminated employees to receive severance pay equal to their salaries for a specified period of time, the entire sum is entitled to be treated as having administrative priority. Conversely, where only employees who have served for a certain period of time are entitled to severance pay and the amount thereof is therefore dependent upon the length of the employee's service, only that portion of the severance pay claim which can be apportioned to services performed after filing of the bankruptcy petition is entitled to administrative priority treatment. *See also, In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir.1976).

The Third Circuit Court of Appeals case involved two types of severance pay: (1) severance pay in lieu of notice of termination for the Typographical Union, and (2) severance pay based upon length of employment for the Newspaper Guild. The

---

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.
(2) Second, unsecured claims allowed under section 502(f) of this title.
(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—
    (A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
    (B) to the extent of $2,000 for each such individual.

**2.** Section 503 (11 U.S.C. § 503)

§ 503. Allowance of administrative expenses.
(a) An entity may file a request for payment of an administrative expense.
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
    (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

contract of the Typographical Union provided for two working days' notice to be given any employee prior to lay off. For unknown reasons, the notice was not given prior to the discharge of the employees. The court held that the appropriate remedy was for each employee to receive two days of wages as severance pay since they had been unprotected against the sudden stoppage of wages. Additionally, the court held that wages were entitled to administrative priority, stating:

> The severance pay, in that it moves to all employees regardless of length of service, is held to be wages wholly earned and accrued under the trustees' management and therefore, is entitled to priority as such. *In re Public Ledger*, 161 F.2d at 771.

The contract of the Newspaper Guild provided for two weeks' severance pay to employees who had worked for more than six months and less than one year, with additional provisions for employees with longer standing periods of service. In finding that the severance pay entitlement should be pro-rated on the basis of whether the employment was rendered before or after the commencement of the bankruptcy, the court said:

> We hold that the discharge provisions of the Guild contract relates to wages and any sum received by the employee under it is part of his wage. Upon the conditions of the contract being met, money earned each day of the service matures in time to the status of a due debt. Each claim, therefore, should be allowed in its rightful sum as a charge against the estate and that portion which was so earned under the trustee's management should be given the priority due to administrative expense. *In re Public Ledger*, 161 F.2d at 773.

■ The rationale for the bifurcation in the treatment of severance pay claims is explainable by focusing on the consideration which supports the claim. In the first scenario, the consideration for receiving severance pay is being an employee of a debtor-in-possession in good standing at the time of the termination of duties. In the second situation, the consideration for receiving severance pay is the services performed for the company over the entire period of each employee's employment. *In re Mammoth Mart, Inc.*, 536 F.2d at 955. When the claim is based upon a contract between the employer and the employee, the claimant's right to payment is afforded administrative priority only to the extent that the consideration supporting the right to payment was both supplied to and beneficial to the employer in the operation of the business. *In re Mammoth Mart, Inc.*, 536 F.2d at 954.

■ The controversy before the court presents a hybrid situation. AI's plan allows severance pay benefits for both being an employee in good standing at the time of termination and for the time period of the employee's continuous service. Under the heading "Coverage Provided", the plan details severance pay benefits to three classes of employees as follows:

A. *Non–Exempt Salaried Employees*
The Severance Pay Plan provides benefits equal to the participant's base monthly salary for (1) month plus one (1) week for each full year of continuous service up to the maximum benefit. The maximum benefit for non-exempt salaried employees is five (5) months' salary.

B. *Exempt Salaried Employees (Salary Grades 17–29)*
The Plan provides benefits equal to the participant's base monthly salary for three (3) months plus one (1) week for each full year of continuous service up to a maximum of eight (8) full months of salary.

C. *Exempt Salaried Employees (Salary Grades 30 and above)*
The Plan provides benefits equals to the participant's base monthly salary for six (6) months plus one (1) week for each full year of continuous service up to a maximum of twelve (12) months of full salary.

Upon termination, an employee receives both a base monthly salary and an additional severance benefit dependent upon the length of the continuous service. The plan

does not require any specified time period of service in order to receive the base monthly salary portion of the benefit. Therefore, it is clear that the consideration for receiving this portion of the severance pay is being an employee of the debtor in good standing at the time of the termination of duties. As a result, this portion of the severance claim is entitled to administrative priority to the extent that all of the employees are treated on a uniform basis.

In other words, regardless of which of the three classes of employment a claimant falls into, a minimum of one month base salary is provided. However, as an employee climbs the company ladder and moves into a financially more lucrative class, the severance benefit increases. Employees in the exempt salaried class containing salary grades of 30 or higher receive severance pay that includes base monthly salary for six months. Therefore, to the extent that the employees of a salaried class receive additional months of severance salary, this additional portion of the severance claim much like the claim based on length of service is also seniority based. As a result, only the one month of pay that is received by all of the employees regardless of class, is entitled to administrative priority. The remaining portion of this lump sum benefit awarded to the exempt salaried employees must be added to the other severance benefit and awarded priority only to the extent that it was earned post-filing or within 90 days prior thereto. Any remaining severance benefit should be treated as a general unsecured claim.

Otherwise, the careful consideration Congress gave in determining which claims based upon an employee's relationship with a debtor-in-possession should be given priority vis-a-vis the claims of other creditors would be undermined. To allow, for example, these severance pay claimants to recover ahead of bona fide wage claims of other former employees and without prejudice to any wage claims that the severance pay claimants might themselves have, would work an injustice that Congress could not have intended. *In re Mammoth Mart, Inc.*, 536 F.2d at 955.

AI filed for bankruptcy protection on February 22, 1988. Each of the claimants was terminated after June 1, 1988 and prior to August 31, 1988. Therefore, at most, six and one-half months of service were rendered. If, in addition to his regular wages, an Exempt Salaried Employee with a salary grade category of 30 or above were to receive administrative priority for his severance pay claim equal to six months of salary plus one week of salary for each full year of continuous service up to a maximum of twelve months of full salary, the employee would be able to receive a windfall ahead of bona fide claims of other creditors in this case.

The case most factually similar to the one before the court is *In re Mammoth Mart, Inc.*, 536 F.2d 950. In that case, the United States Court of Appeals for the First Circuit held that the severance pay claims were not entitled to priority as a cost of administration. The claimants, all of whom had worked for the Debtor-in-Possession for more than four years, had filed claims for additional severance pay above the previously received payment of four weeks' salary. They argued that it was company policy to pay severance pay of one week's salary for each year of employment, subject to no maximum.

The court held that the claimants' right to payment would be afforded administrative priority only to the extent that the consideration supporting the claim was both supplied to and beneficial to the Debtor-in-Possession in the operation of the business. Since the claimants had worked only a short period of time after the filing of the bankruptcy petition and had received severance pay equal to four week's salary, there was no question that whatever portion of their severance pay claims arose from transactions with the Debtor-in-Possession had been previously paid. *In re Mammoth Mart, Inc.*, 536 F.2d at 954.

Similarly in the case at bar, the vast majority of the work performed by the claimants was pre-petition. Nevertheless, the Debtor-in-Possession made severance payments of three months' salary. It is

clear that each claimant has been more than adequately compensated for the portion of their severance pay claim generated from post-petition services.

The claimants would have the court follow the rationale behind the Ninth Circuit decision in *In re Pacific Far East Line, Inc.*, 713 F.2d 476, 479 (9th Cir.1983), where the court in treating the severance pay claims as administrative expenses held that the pre-bankruptcy filing hours of services rendered "were merely the units of measure for the post-filing payments, which were necessary for continued performance by both the employee and employer under the collective bargaining agreement." Because the obligation to make payments was between the employer and the Maritime Association Benefit Fund, the court further found that the payments were not wages of the employees and therefore were not "remuneration for work performed before the filing date." *In re Pacific Far East Line*, 713 F.2d at 478.

However, in that case the employer was required to make payments to the Maritime Association based on the days worked by its employees, regardless of whether the individual employees were eligible for benefits. Therefore, the severance pay was not conditioned upon a given length of service.

It should also be noted that the United States Court of Appeals for the Ninth Circuit addressed this severance pay issue one year earlier in *In re Health Maintenance Foundation*, 680 F.2d 619 (9th Cir.1982). There, the court found that since the severance pay was earned from work performed prior to the bankruptcy filing, the consideration necessary for the claims had accrued before the bankruptcy occurred. Further, the court found that the willingness to continue to work after the company had filed for bankruptcy protection did not increase the consideration supporting the severance pay claims. As a result, the claims were not entitled to administrative priority.

Although all of the above-cited cases were decided under the former Bankruptcy Act of 1898, it is clear that regardless of whether former § 64(a)(1) or 11 U.S.C. § 503(b)(1)(A) of the Bankruptcy Reform Act of 1978 is applied in determining the administrative priority of a claim, statutory priorities are to be narrowly construed. *Joint Industry Board v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 1493, 20 L.Ed.2d 546 (1968); *In re United Merchants & Manufacturers, Inc.*, 597 F.2d 348, 349 (2d Cir.1979); *In re Mammoth Mart, Inc.*, 536 F.2d at 953. *See also, Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir.1986).

It is not disputed that the former employees are entitled to severance pay claims against the Debtor-in-Possession. What is being decided is to what extent these claims are to receive priority treatment ahead of other claims. The court holds that to allow the entire severance pay claims to receive administrative priority would frustrate the intent of Congress. The parties are directed to submit to the court within 15 days from the date of this opinion reclassified severance pay claims in compliance with this opinion.

### ORDER OF COURT

AND NOW, this 8 day of May, 1990, for the reasons expressed in the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT:

1) Each severance pay claim is entitled to one month's salary as an administrative priority claim;

2) Each severance pay claim is additionally entitled to administrative priority to the extent that the claim was actually earned post-petition;

3) Each severance pay claim is additionally entitled to priority as defined in 11 U.S.C. § 507(a)(3) to the extent that the claim was actually earned 90 days immediately prior to the filing;

4) The remaining portion of the severance pay claims shall be treated as general unsecured claims;

5) Within 15 days from the date of this order, the parties are to jointly submit to the court the severance pay claims as reclassified in compliance with the foregoing opinion; and

6) The time for appeal is extended for an additional 15 days.