**In re WEAN INCORPORATED, Debtor.**

**BARTO TECHNICAL SERVICES, INC., formerly known as Wean Incorporated, Movant,**

v.

**PERSONS LISTED ON EXHIBIT A–I OF THE OBJECTION, Respondents.**

**Bankruptcy No. 93–22549–JKF. Motion No. DZ–8.**

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 2, 1994.

David Ziegler, Reed Smith Shaw & McClay, Pittsburgh, PA, for debtor.

David M. Fusco, Schwarzwald & Rock, Cleveland, OH, for United Steelworkers of America, AFL–CIO, CLC.

David W. Lampl, Sable, Makoroff & Gusky, P.C., Pittsburgh, PA, for Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is Debtor's motion seeking reconsideration of our opinion and order of July 5, 1994, 169 B.R. 126, overruling Debtor's objections to certain claims of its former hourly employees for priority for severance pay. Previously, we determined that the severance pay to which these employees were entitled was subject to (a) administrative priority under 11 U.S.C. § 507(a)(1) for the postpetition period in which the employees worked; (b) priority under 11 U.S.C. § 507(a)(3) for the 90 days prepetition in which services were rendered; and (c) unsecured status for the balance. In light of the pleadings and argument of counsel at the hearing held on August 23, 1994, on the motion for reconsideration, we find that our prior order was based on a misapprehension of Debtor's arguments. We conclude, however, that the ultimate resolution as stated above was correct. Accordingly, the prior opinion and order are withdrawn and we issue this opinion and the accompanying order.[1]

The parties have filed a stipulation of facts and agree that this dispute is ripe for decision. The claims at issue result from the sale and permanent shutdown of Debtor's Youngstown, Ohio, plant on October 12, 1993. The collective bargaining agreement sets forth a scale of severance allowance which increases the number of weeks of benefits as the affected employee passes milestones in length of service. Debtor contends that, except for two employees whose entitlement to severance pay increased during the priority period, all of the hourly employees had attained the maximum severance pay to which they were entitled before 90 days prepetition. That is, the employees had completed length of service requirements for severance pay under the collective bargaining agreement within their individual categories outside the priority period. Therefore, Debtor argues, none of the work performed during the priority and administrative (postpetition) periods resulted in entitlement to more severance pay than existed prior to the priority period.

The United Steelworkers of America, AFL–CIO, CLC (hereafter "USWA"), takes the position that severance pay is earned throughout an employee's tenure with an em-

---

1. Our previous decision also dealt with employees who were hired by the purchaser. However, this opinion involves only hourly employees and the parties agree that none of them have been rehired. Therefore, it is not necessary to reach the issue and we do not address it herein.

ployer. Therefore, the USWA argues, portions of severance pay attributable to services performed during the 90–day priority period are entitled to § 507(a)(3) priority. Portions attributable to postpetition services provided to Debtor are entitled to administrative priority under § 507(a)(1). Employees who were not employed as of the shutdown of the plant, which, in this case, was postpetition, would not have been entitled to severance pay at all under the collective bargaining agreement.

The terms of the collective bargaining agreement dictate who is entitled to severance pay.[2] *Cf. Hardtke v. Exide Corp.*, 821 F.Supp. 1021, 1027 (E.D.Pa.1993) ("[a] court will go beyond the plain language of a benefits plan only if a determination is made that one or more of the terms are ambiguous"). In this case the relevant portion of the collective bargaining agreement is entitled "Section 18 Severance Allowance". In pertinent part, Section 18 provides:

### A. Conditions of Allowance

When in the sole judgment of the Company, it decides to (i) close permanently the operations of a plant or, (ii) discontinue permanently a department, or a substantial portion thereof, and terminate the employment of individuals, an employee whose employment is terminated, either directly or indirectly as a result thereof because he was not entitled to other employment with the Company under the provisions of Section 13—Seniority, of this Agreement, shall be entitled to a severance allowance in accordance with and subject to the following provisions. Neither the transfer of certain work from one plant to another plant, in the same seniority unit, nor the peranent [sic] closing of one plant with the operations formerly performed in the closed plant to be performed in another plant of the same seniority unit, shall be construed as being covered by this Section but instead shall be considered as a layoff situation covered by Section 13—Seniority, of this Agreement . . .

### B. Eligibility

An employee, to be eligible for a severance allowance, shall have accumulated three (3) or more years of continuous service as computed in accordance with Section 13—Seniority, of this Agreement . . .

### C. Scale of Allowance

An eligible individual shall receive a severance allowance based upon the following weeks for the corresponding years of seniority:

| Seniority | Weeks of Severance Allowance |
|---|---|
| 3 years but less than 5 years | 4 |
| 5 years but less than 7 years | 6 |
| 7 years but less than 10 years | 7 |
| 10 years or more | 8 |

*See* Stipulation of Facts at Exhibit, Docket Entry 702. Thus, under the terms of the collective bargaining agreement, severance pay accrues based on length of service. The right to payment, however, occurs only in the event of a permanent shutdown and termination of the employee.

The parties agree that on October 12, 1993, Debtor sold substantially all of its United States assets, including its Youngstown, Ohio, plant. It is not disputed that Debtor permanently ceased operations of the Youngstown plant on the same day. The parties are in accord that during the 90 days before the bankruptcy was filed, 125 hourly employees performed services for Debtor and that postpetition, until October 12, 1993, the date of the permanent shutdown, 120 hourly employees performed services for Debtor.[3] Stipulation of Facts at ¶¶ 3, 4, 5.

---

**2.** We note that the collective bargaining agreement was rejected effective December 31, 1993, two months after the sale. Inasmuch as Debtor was not in business after October 12, 1993, and in light of the terms of the collective bargaining agreement, we use October 12, 1993, as the operative date for calculation of severance benefits. The parties agree. *See generally Kotrosits v. GATX Corp. Non–Contributory Pension*, 970 F.2d 1165, 1176 (3d Cir.), *cert. denied*, ⎯⎯ U.S. ⎯⎯,

113 S.Ct. 657, 121 L.Ed.2d 583 (1992), and cases cited therein.

**3.** The parties also stipulate that, except for two employees, "none of Debtor's hourly employees are entitled to a greater severance allowance than they would have been entitled to had the permanent shutdown been declared ninety days prior to the filing of Debtor's petition for relief or on the date the petition was filed." Stipulation

Both parties cite *In re Roth American, Inc.*, 975 F.2d 949 (3d Cir.1992), in support of their positions. *Roth American* identified two types of severance pay claims: those claims that arise at termination of employment (a) in lieu of notice and (b) based on length of employment. *Id.* at 957. The severance pay in the case at bar is of the second type. Debtor argues that under *Roth American* the severance pay claims have administrative priority only to the extent that entitlement to the *amount* of severance pay accrued during the postpetition period. By analogy, the argument applies to the priority period as well. We disagree that the right to a specific amount of severance pay must accrue during the priority or postpetition period in order that the claim fall under § 507(a)(1) or (a)(3). *Roth American* holds that severance pay claims "only have administrative priority to the extent that they are based on services provided to the bankruptcy estate postpetition." 975 F.2d at 957. Although there is language in that opinion concerning the timing of the earning of benefits, we do not read it to require that a specific amount of severance benefit must accrue during a priority period; rather, the right to payment at all must accrue at the relevant time. The Court of Appeals pointed out, with respect to § 507 administrative expenses, that § 503 refers to expenses that are actual and necessary to preservation of the estate, including those are incurred in relation to services rendered postpetition. 975 F.2d at 958.

It is undisputed that 125 hourly employees performed services for Debtor in the 90 days prepetition and 120 hourly employees did so until the permanent shutdown. Stipulation of Facts at ¶¶ 4, 5. To the extent that these employees were eligible for severance pay when their employment with Debtor ceased,

the severance pay attributable to the postpetition period must be given administrative priority. 11 U.S.C. § 507(a)(1). Similarly, that portion attributable to services performed in the 90 days prepetition falls within the purview of § 507(a)(3). *See In re Jeannette Corp.*, 118 B.R. 327 (Bankr.W.D.Pa. 1990); *In re Levinson Steel Company*, 117 B.R. 194 (Bankr.W.D.Pa.1990).

█ Section 507(a)(3)(A) refers specifically to severance pay claims which are "earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first." Under the collective bargaining agreement in this case, severance pay was not earned unless a plant or department closed and employees lost their jobs. Employment until the permanent shutdown was a necessary step to the right to severance pay. Had an employee left the company before the permanent shutdown, that individual would have lost entitlement to all severance benefits. The shutdown occurred postpetition and the employees whose severance is at issue were all employed until the shutdown, including throughout the priority period. Thus, their entitlement to receive severance benefits arose postpetition, although the amounts of the benefits (for all but two employees) were fixed before 90 days prepetition.[4] Entitlement to any severance benefit is governed by the contract. Section 507 merely dictates the order of payment to various classes of creditors.

In summary, portions of severance pay attributable to services performed for Debtor postpetition are entitled to administrative priority under *Roth American.* Portions of severance pay attributable to the 90–day prepetition period are payable with priority to the extent of $2,000 if not already paid.[5]

of Facts at ¶ 7. At the argument on the motion for reconsideration, the parties agreed that this statement refers to the number of weeks of severance pay to which employees are entitled based on their years of service. *See* the Scale of Allowance in Section 18C of the collective bargaining agreement, *supra*.

4. Two employees passed the milestone for length of service and gained additional weeks of severance benefits in the 90 days prepetition. Two others did not qualify for additional benefits be-

cause their length of service stayed within the same step during and after the priority period.

5. In this case, Debtor was authorized previously to pay wages and/or vacation pay to its hourly employees, not to exceed the $2,000 priority amounts. Thus, any priority payments already made must be subtracted from the $2,000 maximum priority before additional sums are paid for priority severance claims. The balance of the severance pay claims for prepetition services is unsecured. Similarly, to the extent that adminis-

Amounts in excess of the $2,000 priority allowance constitute unsecured claims.

As a result of the argument on the motion for reconsideration, we withdraw the opinion and order of July 5, 1994, and substitute this opinion and order.

An appropriate order will be entered.

### ORDER

And now, to-wit, this 2nd day of **September, 1994,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED** that the Memorandum Opinion and Order dated July 5, 1994, are **WITHDRAWN** and Debtor's Motion to Reconsider the Opinion and Order of July 5, 1994, is **GRANTED.**

It is **FURTHER ORDERED,** after reconsideration, that the Amended Second Omnibus Objection to Claims of hourly employees for severance benefits is **OVERRULED.**

It is **FURTHER ORDERED** that the hourly employees' claims for severance pay shall be paid in accordance with paragraph 8 of the Stipulation of Facts at Docket Entry 702 submitted by Debtor and the United Steelworkers of America, AFL–CIO, CLC.

trative expenses have been paid, they shall not be paid twice.