

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-2002

# In Re: Hechinger Inv

Precedential or Non-Precedential: Precedential

Docket No. 01-2018

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"In Re: Hechinger Inv " (2002). *2002 Decisions*. Paper 447.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/447

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed July 26, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2018

IN RE:
HECHINGER INVESTMENT
COMPANY OF DELAWARE,
        Debtor

FORMER EMPLOYEES OF BUILDERS SQUARE
RETAIL STORES

v.

HECHINGER INVESTMENT COMPANY OF DELAWARE

PATRICIA A. STAIANO,
        Trustee

Edmund Adams, Vera L. Addison, Paul Ambrose,
Mary Jo-Andrews, Kok Ang, Richard C. Athey,
Chris Ausse, Carl F. Baker, William C. Barnes,
Sharon Baum, Lois J. Bednarski, William F. Behl,
Janet E. Bell, J. Brian Bird, Cheryl Blackburn,
Denise Booker, Ruth A. Borling, Carol Ann Bosley,
Myra Bowyer, Wallace E. Boykin Jr., Jim Brearley,
Richard Brimer, Yvonne D. Brooks, Shari L. Brown,
John H. Brown, William Brundies, Ella Ruth Bryant,
Daniel Bucel, Blanche Bulley, Kathleen Bush,
Charles Cahlik, Jeffery S. Cajka, Ronald T. Caldwell,
Dianne Calloway, Chester A. Capron III,
Kevin L. Carpenter, James Caswell, Sandra Cicak,
Bradley Clark, Thomas A. Clay, Mary Jo Cleary,
William Cogar, Tricia L. Cole, Stephanie Covington,
Wanda Cruz, Linda Csensich, Kenneth E. Curtis,
Karen Cusano, Michael J. D'Onofrio, Yvonne Dagy,
Sabrina Davis, Richard C. Davis, Richard R. DeJean,
Eugene DeMarco, Susan L. Dennison, Arthur J. Derk,

Martin Disque, Virginia Donnnenwirth,
Margaret Drechney, Michael E. Dubay, Thomas P. Dudley,
Thomas E. Dumski, Clarence Eacott, Barbara L. Erwin,
Jeffrey F. Evans, Daniel W. Fava Jr., Sandra Fazzini,
Debbie Felix, Kenneth M. Ferrence, Carl P. Fetsko,
Lori A. Fetsko, Michael W. Fletcher, Gary W. Flint,
Matt Forkapa, Karen E. Foster, Troy K. Fowler,
Donald E. Fowler, Jennifer J. Frank, Robert W. Frazier,
Kathleen Frederick, Patricia Galderio, Daniel E. Gallagher,
David A. Gansel, John R. Gardner, Brenda C. Getz,
Bonnie K. Gorski, James P. Gourley, Sandra L. Grace,
Robyn C. Green, David D. Gregory, Sharon Grimm,
Vivian Grimsley, Debra Gullickson, Joann M. Hale,

Joseph L. Hall Sr., James L. Harris, John F. Hausen,
Donna Hazelip, Kenneth R. Heizer, Dale A. Heppner,
David Hercules, John J. Hereshko, Tracy Hill,
Patricia A. Holt, Imre Horvath, Kim Hricko,
Dana M. Hudson, Donna J. Huelsman, William S.
Hundsdorf, Todd L. Huston, Peggy A. Huwig, Michael
Kelly Irwin, Tracy Jablonske, Frederick Jacobs, Nancy J.
Jessel, Madelyn Johanyak, Marlene Johns, George F.
Johns, Ralph Johnson, William L. Jones, Ronald W.
Kammer, Thomas P. Kanesky, Marie T. Kerg, Thomas
Kilroy, Gerald O. King, Melissa Kinsinger, Gloria Kinzig,
John Kirby, Alice M. Kissner, LeRoy N. Kline, Richard L.
Klotz III, Francis M. Kovach Jr., Clarence J. Krejci,
Cynthia C. Lacek, Kirk W. Lambert, Joseph E. Lamp, Bob
Largent, Patricia A. Latshaw, Grover E. Lawrence, Frank
D. Leatherman, Roselynn Leone, Wayne E. Lindblom,
Devon D. Logan, Mark Logan, Vickie L. Lohr, Samuel
Lopez, Lourdes Lopez, Marc Madden, Debra A. Magpoc,
Mary Kay Maihle, Fred Martz, Terrie Mast, Sharon Mauro,
Frederick McCloud, Michael G. McConnell, Norman E.
McFeeders, Robert C. Mehaffie, Sharon A. Meredith, Lana
L. Mieyal, Vincent Miller, Richard Miller, LaDonna Miller,
Patricia A. Millman, John L. Minute, Laverne K. Miozzi,
Patricia Mitchell, Ann Moody, Michelle K. Morgan, Alan R.
Moriarty, Cathy J. Moulin, Steven W. Murray, Mark R.
Muska, Phillip E. Nelson, Kenneth P. Nemeth, Marlin
Nester, Lori Nimnicht, Joseph H. O'Neill, Karen M.
Oakley, Marcia E. Orr, Charles R. Owens, Roger E. Paden,
Harold L. Pair, Albert Parker, Marilyn J. Parks, Pravin A.
Patel, Terry L. Peoples, Lisa Pettit, Holly K. Phipps,

2

Kenneth Phipps, Robert H. Pierson, Gregory J. Plasity,
Joanne M. Pratt, Cheryl Priebe, Margaret A. Pullin,
Thomas D. Purtell, Maxine Rak, Jeffrey E. Randall,
Brittany E. Reed, Kathy L. Reed, Jeff Reed, Lance Reep,
Debra V. Rhoad, Betty J. Riley, Thomas R. Rister, Angus
R. Robinson, Jerry L. Rose, Daniel J. Ross, Scott Roten,
Robin Roy, Debra Rumbaugh, Linda L. Runchey, Theresa
E. Sabatino, Peggy Sawyers, Willie J. Scott, Daniel A.
Sedlak, Patrick V. Seymour, Christopher Shane, Seth
Sherban, Joseph A. Sherbert Jr., Geraldine Shukait,
Robert Sines, Barbara A. Slade, Steve Smith, Larry Smith,
Elaine T. Snider, Theodore J. Snyder, Charity A. Spicer,
James Staats, Michael J. Stauder, Sharlene Stevens,
Shirley H. Stewart, Mark Stoughton, Barbara J.
Stoughton, Norman J. Suplicki, Linda M. Swihart, Lynette
Szymczyk, Darrell Tarver, Andrew S. Taylor, Patricia
Taylor, Valerie A. Terry, Debra S. Thomas, Eric
Thompson, Gary G. Tichy, Paul T. Tinch, Erik Toth,
Nicolinna Travaglini, Roger Tubbs Jr., Patricia A. Turley,
Judith M. Tyree, Kim VanBlaricum, Frank Villwock,
Louise Walunis, Michael T. Ward, Donald Watson, Brian
D. Watts, Susan Wendling, Lora R. Wheeler, Julie
Wiencek, Gladys M. Wilders, Williams Williams, James W.
Willis, Joseph P. Wilson, Brian C. Winland, John Yencho,
Danena Young, Jimmie D. Young,
       *Appellants

*Pursuant to Rule 12(a) of the Federal Rules of Appellate
Procedure.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(Dist. Court No. 00-CV-00171)
District Court Judge: Joseph J. Farnan, Jr.

Argued: March 5, 2002

Before: ALITO, RENDELL, and HALL,[1]
Circuit Judges.

_____

1. The Honorable Cynthia Holcomb Hall, Circuit Judge for the Ninth
Circuit, sitting by designation.

3

(Opinion Filed: July 26, 2002)

        Brain E. O'Connor (Argued)
        Julie O. Veit
        Willkie Farr & Gallagher
        787 Seventh Avenue
        New York, NY 10019

        Deborah E. Spivack
        Mark D. Collins
        Richards, Layton & Finger, P.A.
        One Rodney Square
        Wilmington, DE 19899

        Counsel for Appellee

        Lawrence E. Oscar
        Alan S. Kopit
        Julie K. Zurn (Argued)
        Hahn Loeser & Parks LLP
        3300 BP Tower
        200 Public Square
        Cleveland, OH 44114

        Robert D. Gary
        Thomas R. Theado
        Thomas A. Downie
        Gary, Naegele & Theado
        446 Broadway
        Lorain, OH 44042

        Morton Branzburgh
        Klehr Harrison Harvey
        Branzburgh & Ellers LLP
        260 South Broad Street
        Philadelphia, PA 19102

          Steven K. Kortanek
          Klehr Harrison Harvey
          Branzburgh & Ellers LLP
          919 N. Market Street
          Wilmington, DE 19083

          Counsel for Appellants

OPINION OF THE COURT

ALITO, Circuit Judge:

In this bankruptcy appeal, former employees of
Hechinger Investment Company and related entities
("Hechinger") contest an order under which certain
employee benefits are treated as administrative expenses
only to the extent that they are attributable to employment
services performed after Hechinger filed for relief under
Chapter 11 of the Bankruptcy Code. For the reasons stated
below, we affirm the order of the District Court.

I.

Hechinger operated 206 general home improvement
stores under a variety of names, including Hechinger,
Builders Square, and Home Quarters Warehouse. Due to
financial difficulties, Hechinger decided to close 34 of its
Builders Square Stores in February of 1999. In order to
liquidate the inventory of these stores, Hechinger held
"going out of business" sales. Wishing to ensure that each
store would retain experienced staff to run these sales,
Hechinger offered two types of special benefits (hereinafter
collectively "Stay-On Benefits"). First, Hechinger offered to
increase the percentage of "BHQ Time" for which an
employee would be paid on termination. Employees
accumulated BHQ Time (a combination of vacation, sick,
holiday, and personal days) at rates that varied based on
length of service. Employees not participating in the Stay-
On Benefits program, received payment for 50% of their
BHQ time upon termination. Under the Stay-On Benefits
program, however, employees were to be paid for 100% of
this time. Second, participating employees were to receive
severance pay in amounts that varied based on length of
service with the company. Full-time employees who had
completed at least nine months of continuous service as of
the date of termination were eligible to receive one week of
severance for each completed year of service, up to a
maximum of 13 weeks. To be eligible to receive any of these
enhanced benefits, however, an employee had to remain

with the company until the employee's store was closed or
the employee was released by the company.

On June 11, 1999, Hechinger voluntarily filed petitions

for relief under Chapter 11 of the Bankruptcy Code. On August 3, 1999, employees of the 34 closing Builders Square stores ("employees") filed a motion in the United States Bankruptcy Court for the District of Delaware requesting immediate payment of benefits owed under the Stay-On Benefits plan as administrative expenses under 11 U.S.C. SS 503(b)(1)(A), 507(a)(1), and 105.

The Bankruptcy Court granted this relief only in part. The Court apportioned both the BHQ time payments and the severance pay between the period of pre- and post-petition employment and treated only the latter as administrative expenses. The District Court affirmed, and this appeal followed.

We have appellate jurisdiction pursuant to 28 U.S.C. S 158(d). Our review of the District Court's decision effectively amounts to review of the bankruptcy court's opinion in the first instance. See In re Telegroup, Inc., 281 F.3d 133, 136 (3d Cir. 2002). Interpretations of the Bankruptcy Code are subject to plenary review. See In re Abbotts Dairies, 788 F.2d 143, 147 (3d Cir. 1986). We review a refusal to exercise jurisdiction under 11 U.S.C. S 105 for an abuse of discretion. See Nordhoff Invs., Inc. v. Zenith, 258 F.3d 180, 182 (3d Cir. 2001).

II.

The dispute between the parties is limited to the priority to be afforded to the Stay-On Benefits claims. The employees argue that the entirety of their claims qualify as administrative expenses under S 503(b)(1)(A) because the benefits were not "earned," i.e., employees could not expect payment, until after the last day of business of the individual store or the individual employee's release date. Each named employee completed employment after Hechinger's petition date. The employees contend that this feature of the Stay-On Benefits distinguishes them from conventional severance pay and that therefore this case is not controlled by our precedents allowing administrative

6

priority to claims for severance benefits only inasmuch as the claims arose post-petition. Based on their contention that the benefits at issue here were earned after the petitions were filed, the employees argue that they are administrative expenses under S 503(b)(1)(A).

Section 503(b) provides:

>After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including

>(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. S 503(b) (emphasis added).

Under S 507, certain categories of expenses and claims enjoy priority. Administrative expenses allowed under S 503(b) receive first priority in the distribution of the assets of the debtor's estate. See 11 U.S.C. S 507(a)(1). In a Chapter 11 case, a court cannot confirm a distribution plan unless the plan provides full cash payment of allS 503(b) administrative expense claims or the claim holder agrees to different treatment. See 11 U.S.C.  SS 943(b)(5), 1129(a)(9)(A).

The employees also argue that Hechinger will be unjustly enriched if all Stay-On Benefits are not treated as administrative expenses and that immediate payment of their claims should be ordered under Bankruptcy Code Section 105, 11 U.S.C. S 105.

III.

The employees' principal argument is that the Stay-On Benefits are entitled to administrative expense priority because they were earned after the filing of the petition and directly and substantially benefitted the estate. Noting that employees qualified for these benefits only if they remained until released, the employees state that these benefits "were not earned ratably over time" but "were earned upon the Employees' release." Appellants' Br. at 7 - 8. The employees explain:

> [T]he "Stay-On Benefits" are distinct from wages and other traditional compensation benefits which compensate employees for their daily work. This separate element cannot be prorated between prepetition and postpetition periods; no Stay-On Benefits would be due and owing if an employee left the employ of Hechinger before his/her release by Hechinger.

Appellants' Br. at 12. In addition, the employees argue that, even if the Stay-On Benefits are treated like ordinary severance benefits, the Stay-On Benefits must be classified as administrative expenses because the employees' consideration -- remaining in good standing at the time of termination -- was furnished after the filing of the petition.

In analyzing the employees' argument, we begin with the language of Section 503(b)(1)(A). Under that provision, as noted, "wages, salaries, or commissions for services rendered after the commencement of the case" may be allowed as administrative expenses. Thus, in order for the Stay-On Benefits to qualify in toto, as the employees desire, these benefits must have been "for services rendered after the commencement of the case." It is apparent, however, that all of the Stay-On Benefits cannot meet this requirement. Suppose that the employees, after enlisting in

the Stay-On Benefits program, had absented themselves
from work until the moment when the bankruptcy petition
was filed and had then showed up professing a willingness
to remain on the job until release. The employees would
have been ready to perform all of the services to be
"rendered after the commencement of the case," but
because they had not rendered the specified services prior
to that point, they would not qualify for the Stay-On
Benefits (or, presumably, for continued employment with
the debtor).

Under the Stay-On Benefits program, the consideration
furnished by the employees was the work that they did
every day from the time when they agreed to the Stay-On
Benefits program until the closing of their stores or their
release by the company. Some of these services were
rendered before the bankruptcy case was commenced and
some were rendered after. Accordingly, it seems clear to us

8

that some sort of apportionment between the two periods is
needed.

The employees' reliance on the date when the Stay-On
Benefits were to be paid -- at the end of the employees'
term -- is misplaced. Section 503(b)(1)(A) does not give
administrative priority to "wages, salaries, or commissions
due to be paid after the commencement of the case." It looks
to the time when the services were "rendered" not when
they were scheduled for payment. See e.g., In re Commercial
Fin. Servs., Inc., 246 F.3d 1291, 1295 (10th Cir. 2001) (to
determine administrative priority, courts look to"when the
acts giving rise to a liability took place, not when they
accrued") (quotation omitted); In re Sunarhauserman, Inc.,
126 F.3d 811, 818-19 (6th Cir. 1997) (same); In re
Continental Airlines, Inc., 148 B.R. 207, 212 (D. Del. 1992)
("Congress was quite specific about which wage claims were
to receive administrative priority . . . [and] made it clear
that the only wages which were to be given priority in
S 503(b)(1)(A) were those for services rendered post-
petition"); In re M Group, Inc, 268 B.R. 896, 900-02 (Bankr.
D. Del. 2001) (it was not determinative that the payment of
a lump sum severance was contingent on termination,
which occurred post-petition).

It is similarly irrelevant whether the services that the
employees performed prior to the filing of the petition
continued to benefit the debtor after the case was
commenced. Section 503(b)(1)(A) does not provide that
services that have the effect of benefitting the estate are
entitled to treatment as administrative expenses. (Such a
test would be unworkable because services rendered years
before the commencement of a bankruptcy case -- e.g.,
constructing the steps leading to the debtor's principal
facility -- might well continue to result in benefit for the
estate during the post-petition period.) Instead,
S 503(b)(1)(A) refers to services that are"rendered after the
commencement of the case" and that are needed for the

purpose "of preserving the estate." An estate cannot be preserved until it comes into existence, and as the Bankruptcy Court observed, "[t]he estate does not exist prepetition." App. 34.

We also note that the employees have not shown that the work performed pre-petition represents an "actual, necessary cost[ ] and expense[ ] of preserving the estate." 11 U.S.C. S 503(b)(1)(A). Hechinger's closed the stores in an attempt to remain liquid. It is easy to imagine a case in which the pre-petition sale of inventory decreases the value of the estate because inventory is sold at drastically reduced prices in an attempt to remain liquid and avoid bankruptcy. An expense incurred "in exchange for something that is not beneficial to the estate cannot be considered as an expense necessary for preserving the estate." 2 Collier Bankruptcy Manual S 503-18 (3d ed. 2002). For all these reasons, it seems clear that some method of allocation between the pre- and post-petition periods must be used.

Under some circumstances, an argument that the allocation should not be based strictly on the length of the two periods might make sense. (Suppose that a company's business is seasonal, that the going wage varies based on the season, and that the company would have paid different daily wages if it had entered into contracts for two separate periods of time.) But here, the employees do not argue that the Bankruptcy Court used the wrong allocation method; rather, they argue that no allocation was proper. We reject that argument and thus have no occasion to consider alternative methods of allocation.

The appellees argue, and we agree, that the decisions of the District Court and the Bankruptcy Court are supported by circuit precedent. Our Court first addressed the classification of employment benefits as administrative expenses in In re Public Ledger, Inc., 161 F.2d 762, 771-73 (3d Cir. 1947). In that case, several different types of benefits were at issue. The first concerned vacation pay. Under the company's contract with one of its unions, covered employees who worked for the full calendar year received two weeks of paid vacation, while all others received one day's vacation with pay for each 26 days worked. Id. at 765. The Court held that only the vacation pay earned after the trustees took charged should be classified as administrative expenses. Id. at 773. The Court wrote:

> [T]he vacation pay . . . earned before the trustees took
> charge does not constitute wages as administration
> expenses because the service was not given during the
> reorganization period, and it follows logically that
> vacation pay earned under the trustees' management

> does not constitute administration expense, and is
> within the priority such status entitles it to enjoy.

Id. at 768.

Some of the company's employees were also entitled to severance pay in amounts that varied based on the length of their employment. The Court held that these benefits, like the vacation pay, should be allocated between the periods before and after the beginning of the trustees' management. Id. at 772.

The final type of benefit was based on a provision of a contract entitling covered employees to two days' notice before layoff. Such notice was not given, and the Court held that payment for the two days' lost wages was an administrative expense. Id. at 769. The court wrote that this pay, "in that it moves to all employees regardless of length of service, is held to be wages wholly earned and accrued under the trustees' management and, therefore is entitled to priority as such." Id. at 770.

Using the Public Ledger framework, we have distinguished between "(i) pay at termination in lieu of notice; and (ii) pay at termination based on length of employment," with the prior receiving administrative expense priority and the latter receiving no additional priority other than that allowed under S 507(a)(3). In re Roth American, Inc., 975 F.2d 949, 957 (3d Cir. 1992) (quotation omitted). Traditionally, pay at termination in lieu of notice is allowed administrative expense priority because the payments are made in consideration of quick departure from employment after the petition date -- consideration given after the petition. Severance pay at termination based on length of employment is given in consideration of work performed both pre- and post-petition, and thus not all such pay is entitled to treatment as an administrative expense. Id. at 958; see also In re Health Maintenance Found., 680 F.2d 619, 621 (9th Cir. 1982); In re Mammoth

11

Mart, Inc., 536 F.2d 950, 955 (1st Cir. 1976); In re Allegheny Int'l, Inc. 118 B.R. 276, 280 (Bank. W.D. Pa. 1990).

Numerous courts have followed Roth American's teachings that length-of-service severance pay should be allowed administrative expense priority only to the extent that the entitlement arose post-petition. See e.g. In re World Sales, Inc., 183 B.R. 872 (B.A.P. 9th Cir. 1995) (the division of severance benefits between pre- and post-petition employment was appropriate); In re Wean Inc., 171 B.R. 528, 531-32 (Bankr. W.D. Pa. 1994) (even though employees were paid severance benefits only if they stayed until their severance date, "portions of severance pay attributable to services performed for Debtor post petition [we]re entitled to administrative priority under Roth American . . . . Amounts in excess of the [service performed

post-petition] constitute unsecured claims"); In re Allegheny Int'l, Inc., 118 B.R. at 280 (severance benefit tied to seniority was awarded priority "only to the extent that it was earned post-filing or within 90 days prior thereto"). But see In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 160 B.R. 882, 890 (Bankr. S.D.N.Y. 1993) (when termination occurs post-petition, severance pay is automatically classified as an administrative expense regardless of the benefit to the estate).

Under the Roth American taxonomy, the Stay-On Benefits resemble length-of-service pay much more closely than severance pay in lieu of notice. Under the Stay-On Benefits plan, as noted, employees were obligated to provide services both before and after the filing of the bankruptcy petition. Under Roth American, severance pay claims "only have administrative priority to the extent that they are based on services provided to the bankruptcy estate post-petition." 975 F.2d. at 757; see also In re Health Maintenance Found., 680 F.2d at 621; In re Mammoth Mart, Inc., 536 F.2d at 953. Consequently, only the Stay-On Benefits attributable to post-petition services are entitled to administrative expense priority.

12

IV.

The employees' remaining arguments do not require lengthy discussion. The employees argue that the debtor and its creditors will be unjustly enriched if all of the Stay-On Benefits are not classified as administrative expenses. According to the employees, this will allow "them to retain the benefit of the [employees'] consideration without expending the promised compensation." Appellants' Br. at 22. The employees do not cite any provision of the Bankruptcy Code in support of this argument, but they rely on our decision in In re Visual Indus., Inc., 57 F.3d 321 (3d Cir. 1995), and several bankruptcy court decisions.

In re Visual Indus., Inc. concerned Section 506(c) of the Bankruptcy Code, 11 U.S.C. S 506(c), which provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." The employees do not explain how this provision can be applied in the present case, and we see no basis for doing so. We have considered all of the employees' authorities but are not persuaded that the decision of the Bankruptcy Court in this case results in unjust enrichment or that there is a ground under the Code for treating all of the Stay-On Benefits as administrative expenses.

V.

The employees finally assert that immediate payment should be ordered under 11 U.S.C. S 105, which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Here, where other provisions of the Code are specifically controlling, the Bankruptcy Court did not abuse its

13

discretion under S 105. See In re Arrowmill Dev. Corp., 211 B.R. 497, 505 n.9 (Bankr. D. N.J. 1997) ("section 105 does not authorize relief inconsistent with more specific law") (quotation and citations omitted). The Bankruptcy Court determined "[t]o the extent that the clear language of S 503 relegates their claims to general prepetition status, an order for immediate payment under S 105 is inappropriate," and ordered that "[t]o the extent that S 503 and S 507 grant administrative expense status to the Employees' claims, payment will be made according to the schedule of payments for similar claims." App. at 396 n.8. This order is a clear application of S 503 and does not represent an abuse of discretion under S 105.

VI.

For the foregoing reasons, we affirm the judgment of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

14